**IN UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**THEYER ANN TURNER,**

    **Plaintiff,**

**vs.**                        **CASE NO. _____**
                                   **JURY DEMANDED**

**CITY OF MEMPHIS,**

    **Defendant.**

---

**COMPLAINT**

---

Comes now Theyer Ann Turner, and brings this Complaint against her employer, City of Memphis, for discrimination on account of race, disability and FMLA rights, and for retaliation for protected activities pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and in violation of the Americans with Disabilities Act as amended ("ADAA"), 42 U.S.C. §12117 *et seq.* Plaintiff further brings this action against City of Memphis for discrimination on account of her race, black, and alleges in particular a racially hostile work environment, wrongful termination/constructive discharge and denial of benefits, privileges, terms and conditions of the contractual relationship, pursuant to 42 U.S.C. §1981(b), as enacted in the Civil Rights Act of 1991. This cause of action arises under an Act of Congress enacted after December 1, 1990.

## I. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Theyer Ann Turner, (African-American female) also known as Ann Turner, and/or Ann Gallaway, is an adult individual citizen of the State of Tennessee, residing at 6559 Annie Lee Street, Millington, Shelby County, Tennessee 38053.

2.      Defendant City of Memphis is a political municipality established under the laws of the State of Tennessee, with principal offices located at 125 N. Main Street, Memphis, Tennessee 38103, at all relevant times organized and existing under and by virtue of the laws of the State of Tennessee.  It may be reached with service of process by serving its current mayor, Jim Strickland, and/or by serving its City Attorney, Bruce McMullen.

3.      Jurisdiction:   Federal question jurisdiction is conferred on this court under the provisions of Title VII, 42 U.S.C. §2000e 5(f)(3), and pursuant to 28 U.S.C. §§1331 and 1343.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and 1391(c) in that a substantial part of the events or omissions giving rise to the claim occurred in this district and that the Defendant conducts business and may be reached with service of process in this district.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      As to Plaintiff's claims under Title VII and the ADAA:  Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on October 2, 2015.  A true and correct copy of said Charge (No. 490-2016-00023) is attached hereto as Exhibit "A."   Said charge was timely

filed, within 300 days of the events forming the basis of her Title VII and ADAA claims.

6.     On March 30, 2017, the Equal Employment Opportunity Commission issued its Dismissal and Notice of Rights.  A true and correct copy of said Right to Sue is attached hereto as Exhibit B."

7.     This case is timely filed, within 90 days of Plaintiff's receipt of said Notice.

### III.  FACTS

8.     On or about October 3, 2000, Plaintiff was hired by City of Memphis to an appointed/non-civil service position of "Executive Secretary" to the City's "Division of Legislative/City Council."  The effective date was October 10, 2000.

9.     When Plaintiff applied for employment, she applied for a position as an Executive Secretary.  She was asked if she had a location or division preference.  Her response was "no."

10.    Sometime around early 2001, Plaintiff's job title changed to "Administrative Assistant."  At all relevant times there were several other Administrative Assistants working at the City Council offices.  The other Administrative Assistants were earning significantly more than Plaintiff was earning.

11.    As an Executive Secretary/Administrative Assistant, Plaintiff's job duties did not include any policy-making decisions.  She was routinely assigned to three (3) Council members.  To her knowledge, neither Plaintiff or

any of the Administrative Assistants were chosen to be on any Council member's personal staff.   Plaintiff contends no Council member at City of Memphis had a "personal staff."   Plaintiff instead reported to the Council Administrator, Lisa Geater, a white female.

12.    Geater controlled the staffing assignments, not the members of the City Council.    She routinely assigned African-American Administrative Assistants to work with African-American Council members, and white Administrative Assistants to work with white Council members.   One time Plaintiff was assigned to work with a white Council member.   After a week or so, Ms. Geater realized a mistake had been made, and Plaintiff was promptly re-assigned.   To Plaintiff's knowledge, her work performance was exemplary. Members of the Council wrote numerous letters of commendation.   They recommended her for salary increases and promotions.   For several years they reviewed her work performance.

13.    Problems had been developing, however.   For years Plaintiff's salary was not comparable to the salaries of the other Administrative Assistants.   She slowly gained increases but this occurred only as the other Administrative Assistants received increases.   Plaintiff on three or four separate occasions applied for a position as Research Analyst, which was a significant promotion.    Plaintiff was fully qualified for the position.    She had the recommended Master's Decree; she had the required course work.   She had relevant job experience (13 years by 2013) working for the City Council, and well knew the issues of concern to the Council, and the expectations of the

Council.  Yet on each of the these openings, an external person was hired who had little or no experience, no Master's Degree, and each time the successful candidate was Caucasian/white.  And routinely Plaintiff was interviewed by Ms. Geater, not by the Chairperson of the City Council.  Ms. Geater controlled promotions and raises, and she discriminated routinely on the basis of race.

14.     Geater made the decisions on the hires/promotion of Research Analysts.  Geater also made the decision to remove Plaintiff as Assistant to the Chairperson (Harold Collins) (African-American male), a position Plaintiff had occupied for about 18 months.  Geater replaced Plaintiff with one of her closest friends, a white female.  Then Plaintiff was asked to train the replacement. Geater further controlled the office in other ways.  She decided that annual performance evaluations of the Administrative Assistants would no longer be done.  She thereby gained more direct control of her staff and more power over her staff.  She picked plum assignments for her favorites (Caucasians), and less desirable assignments for those who were not her favorites (African-Americans).  She continued to discriminate based on race in deciding who was assigned to which council person.

15.     Geater disliked Plaintiff.  She disliked her on account of her race, African-American.  She treated Plaintiff differently.  She was pleasant and congenial with her white staff.  She gave African-American employees a hard time. Any African-American who wanted to survive, i.e., to keep her job, had to be overly solicitous to Geater.  They had to make extra effort for Geater to tolerate them.  And they had to keep their mouths shut.  They could not

complain.  Likewise, Geater treated white Council members differently from the African-American Council members.  The work environment was charged with racial tension.

16.   Plaintiff filed an internal EEO Complaint on or about July 11, 2013.   Said complaint was handled by the Deputy Director of Human Resources for the City of Memphis, not by the Council Administrator or the Council itself.   Plaintiff's internal EEO Complaint was based on race and alleged that she had been passed over for promotion [Research Analyst] on three occasions on account of race, that Geater had demoted her as Assistant to the Chairman, and was replaced by a white female, and that she had been subjected to discrimination for the past seven (7) years.  Said EEO should not have been handled by the Deputy Director for Human Relations.  It should have gone to the City's EEO/Labor Relations office.  This irregularity was never explained to Plaintiff.

17.   Plaintiff by 2012 had endured at least seven (7) years of discrimination in her position at the Memphis City Council.  Her last request for promotion to Research Analyst was made in late 2012.  In January 2013, she learned a white male had gotten the job.   Thereafter Plaintiff was experiencing on a daily basis a racially hostile work environment, which was both severe and pervasive.

18.   Before Plaintiff submitted her internal EEO Complaint, Plaintiff had experienced numerous and daily incidents of racial harassment and bullying from her supervisor and her co-workers.  When she filed the internal

EEO, the harassment and bullying greatly escalated. She began experiencing symptoms of anxiety, panic attacks, weight loss, hair loss, headaches, sleeplessness, inability to concentrate, and depression. These symptoms increased, and led to Plaintiff having a nervous breakdown in January 2013, which caused her to be taken off work.

19.   On or about January 13, 2013, Plaintiff was taken off work by her treating physician due to the work-related stress. Plaintiff applied for Family Medical Leave, and completed all necessary forms, including the report from her doctor. Said forms were submitted to the Deputy Director of Human Resources for the City of Memphis. Plaintiff thereafter returned to work in April, 2013. From that date forward, Plaintiff continued to experience harassment and bullying from Geater. Geater for example would inform other employees they could leave early. Hours later she would tell Plaintiff. She would tell Plaintiff that she could not attend Council meetings, even though she needed to be present in order to carry out her duties. Plaintiff would be meeting with a Council person, and Geater would interrupt and tell Plaintiff to tell the Council person that she had to leave – she could not stay past 5:00 p.m. But Plaintiff ordinarily worked hours after 5:00 p.m. Geater intentionally embarrassed and humiliated Plaintiff.

20.   On or about July 2014, Plaintiff was again taken off work due to the work stress problems. She again applied for FMLA leave, and used sick leave and vacation leave (which had accumulated over the years of her employment) in order to continue receiving her salary. When Plaintiff was

returned to work, her doctor requested accommodation, namely that Plaintiff work no more than four to five hours per day.  This was due to her medically diagnosed condition which involved difficulties in thinking, concentrating and other disabling conditions.  The City accepted said accommodation initially, and asked for no further information.  When Plaintiff returned to work from the second FMLA leave she still had sick leave on the books, accumulated over the years of employment.  She also had some remaining vacation time. Plaintiff requested to carry over the vacation time to the next year, which Geater denied. Plaintiff returned to work on or about October 23, 2014, and initially was allowed to work part-time.  When that doctor's note expired in early December 2014, the doctor gave Plaintiff another note continuing the part-time work through January 3, 2015.  Plaintiff gave the note to Geater.  Plaintiff never received any approval or disapproval of the continuation of the accommodation.

21.    The City Council and its Chairman knew or should have known that Plaintiff had filed the internal EEO Complaint.   Geater had actual knowledge of the internal EEO.  She communicated with the Deputy Director of Human Relations for City of Memphis concerning it.   No meaningful investigation ensued.  All of the Council members should have participated in the investigation.  They were never questioned.  Geater should have given her statement.  Plaintiff should have given her statement.  Other Administrative Assistants should have been questioned.  Instead, Plaintiff's internal EEO resulted in a finding by the City's Deputy Director of Human Relations of no cause, which was issued on September 23, 2014.  This no cause determination

exacerbated the hostile work environment, and directly contributed to Geater's determination to terminate Plaintiff. Upon Plaintiff's return to work in October, the racially-charged hostile work environment and retaliation became extreme.

22.   On or about December 31, 2014, Plaintiff was supposed to be hospitalized for knee surgery. On December 30, 2014, she arrived at a doctor's office. Her doctor wanted to do more tests before her surgery, and had delayed the surgery. On December 30, 2014, a letter from Geater was delivered to Plaintiff, which she received while she was at the doctor's office. This was the letter informing Plaintiff that she had been terminated, with no cause given.

23.   The Chairman of the Council later explained why Plaintiff was terminated: the City was in the midst of a budget crisis. He said "austere times call for austere measures." He further said that no Council member had requested to work with Plaintiff for the coming year. These statements were untrue. The truth was quite the opposite. Upon firing Plaintiff (and one other African-American), other staff positions were opened up, and the Administrative Assistants and Research Analysts were given significant raises. There was no budget shortage. At all relevant times Plaintiff's salary was included in the annual budget.

24.   Upon receiving the letter informing her that she was losing her job, Plaintiff tried to get that decision reversed. Council members told her that they had not been asked if they wanted to work with Plaintiff. One Council member reportedly stated she did not want to work with Plaintiff under any circumstances. But that Council member denied making that statement. The

response of City of Memphis, by and through its administrators, was to cove up Plaintiff's allegations of racial discrimination, and to deny Plaintiff's rights available to her under the ADAA, and under Title VII.  One other excuse was given, namely that Plaintiff's request for accommodation was signed by her nurse practitioner, not an M.D.  But ADAA/FMLA paperwork is acceptable under the City's policies if signed by a nurse practitioner.

25.    Plaintiff after her termination was told that she was eligible to take retirement.  She was told by a city attorney that if she did not take it, she would lose it.  Plaintiff felt she had no choice.  She could not afford to reject an opportunity for some limited income.  But she felt that she was being pressured to do so.  She did not accept retirement benefits voluntarily, but under duress.

26.    The acts of City of Memphis by and through its administrators were retaliatory against Plaintiff on account of her protected activities, namely her internal EEO Complaint, and her numerous complaints of discrimination made by Plaintiff to Council members, including Ware, Collins, Fullilove, Halbert, Jones, Brown, Ford, Jr., Ford, Sr., and Mitchell.  Retaliatory acts included:  a)  removing Plaintiff from the wall calendar showing requests for vacation and leve; Geater replacing Plaintiff's requested dates in favor of a white female; b)  denying Plaintiff her requested day off and allowing a black female that day; c)  telling Plaintiff repeatedly that she did not like Plaintiff; d) Geater's repeated demands that Plaintiff obtain a doctor's note for a single day's absence (policy required a doctor's note for three consecutive day's

absence; Geater's refusing to speak to Plaintiff, or her acutely rude actions directed towards Plaintiff;  e) Geater asking Plaintiff to do work already assigned to other Administrative Assistants; and f) Geater asking Plaintiff to cover for another employee who for whatever reason repeatedly failed to come to work on time, but who was paid as if she was on time.

27.    The procedures used by the City of Memphis, by and through its administrators, violated the City's policies and procedures for terminating a City employee, including appointed employees.

28.    Use of appointed positions by a municipality does not give the City of Memphis the right to discriminate against the appointees, nor does it allow the City license to violate Title VII, or the ADAA.

29.    Likewise, designating certain City employees as assigned to the chambers of the City Council does not allow the City or the Council to avoid liability under Title VII or under the ADAA, by stating that the Council had fewer employees than the minimum number of employees necessary for these federal acts to be applicable.  The reality is that the staff of persons occupying administrative positions at the Memphis City Council are hired by, employed by, paid by, and had the same benefits defined by the City of Memphis and provided by the City.

30.    The acts of the City of Memphis which allowed the Council Administrator to become tyrannical in her treatment of her staff, including the Plaintiff herein, and to do so in a racially disparate manner, is violative not only of Title VII but also 42 U.S.C. §1981(b).

1

31.    The hostile atmosphere in which Plaintiff has been forced to work has systematically eroded her spirits and threatened her personal safety and emotional health.   Each episode of harassment and retaliation has further diminished Plaintiff's sense of control and has increased her frustration, as the conduct has occurred in spite of her complaints.

32.    As a victim of discrimination, Plaintiff has suffered from severe emotional distress, depression and mental anguish resulting in anxiety attacks.  These conditions, due to the hostile and retaliatory work environment, have caused her great pain and anguish.

33.    As a victim of discrimination, Plaintiff has suffered from the severe stress effects that include profound emotional stress, including anger, fear of physical safety, and physical symptoms, including sleeping problems, headaches and migraines, elevated blood pressure, weight loss, heart palpitations, chest pain, shakes, perspiration, episodes of crying, generalized anxiety, shortness of breath, chest tightness, hair loss, dizziness and other physical ailments, all of which are proximately caused by the stress on the job.

34.    As a direct and proximate result of the acts and omissions of Defendant, through its agents, representatives and employees, Plaintiff has suffered substantial damages and injuries, including loss of income (past and future) and benefits, humiliation, embarrassment and emotional distress, in violation of said laws.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

1.     Judgment be entered declaring that the actions of City of Memphis by and through its servants, agents and employees are in violation of Title VII of the 1964 Civil Rights Act;

2.     Judgment be entered declaring that the actions of City of Memphis by and through its servants, agents and employees are in violation of the ADAA;

3.     Judgment be entered declaring that the actions of City of Memphis by and through its servants, agents and employees are in violation of 42 U.S.C. §1981b;

4.     Awarding equitable relief and injunctive relief as may be appropriate, including back pay and benefits;

5.     Awarding Plaintiff a judgment for front pay, if appropriate, or reinstatement of her job, and promotions;

6.     Awarding Plaintiff judgment for compensatory damages in an amount not less than $300,000.00 against the Defendant under Title VII;

7.     Awarding Plaintiff judgment for compensatory damages against Defendant for violating 42 U.S.C. §1981(b), in an amount determined to be reasonable and appropriate;

8.     Awarding Plaintiff her reasonable attorney's fees and costs of the cause, including discretionary costs; and

9.     Granting Plaintiff such further relief as the Court deems appropriate; and

10.    All other relief, legal and equitable to which Plaintiff may be entitled under the premises.

JURY TRIAL IS DEMANDED.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

*s/Kathleen L. Caldwell, #9916*
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*

1